**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |  |
|---|---|---|
| ROY A. O'GUINN, | ) | |
| Petitioner, | ) | 3:04-cv-00723-RLH-VPC |
| vs. | ) | **ORDER** |
| NEVADA DIRECTOR OF PRISONS, *et al.*, | ) | |
| Respondents. | ) | |

This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by Roy O'Guinn, a Nevada prisoner represented by counsel. This matter comes before the Court on the merits of the second amended petition.

**I. Procedural History**

On June 24, 1999, petitioner was charged with two counts of burglary, five counts of sexual assault, victim 65 years of age or older, and two counts of open or gross lewdness. (Exhibit 3). On June 29, 1999, after being examined by psychiatrists, the district court committed petitioner to Lakes Crossing for psychological evaluation and treatment. (Exhibit 6). On November 9, 1999, a sanity

commission was empaneled to provide reports to the court. (Exhibit 7). On January 18, 2000, the state district court found petitioner competent to stand trial. (Exhibit 10).

A preliminary hearing was held on April 4, 2000. (Exhibit 12). An amended information was filed on October 2, 2000, that charged petitioner with two counts of burglary, one count of open or gross lewdness, and two counts of sexual assault. (Exhibit 15). A guilty plea agreement was filed with the court on October 2, 2000, which provided: that petitioner would plead guilty but mentally ill to the charges in the amended information; that petitioner "agrees not to oppose the Court adjudging him an habitual criminal pursuant to NRS 207.010(b); that petitioner agrees to be sentenced to "life in the Nevada State Prison with parole eligibility beginning after 10 years has been served, on Counts I, III, IV, and V"; that petitioner stipulates that "all counts in this case will be run concurrently at the time of sentencing"; and that "either side could withdraw from the agreement should the court refuse to accept the plea of "guilty but mentally ill," or fail to impose habitual criminal treatment or not to run the sentences concurrently. (Exhibit 16). On the same date, petitioner entered a plea of "not guilty but mentally ill" to the charges in the amended information. (Exhibit 17).

On October 23, 2000, the court held a hearing to establish petitioner's mental illness. (Exhibit 18). The district court judge concluded that "at certain requisite times he [petitioner] was mental ill and incompetent," and that review of all documents "leads me to the conclusion that the relevant times he was incompetent and mentally ill. And therefore, I have jurisdiction to and do accept the plea of guilty, but mentally ill." (Exhibit 18, at pp. 1-2).

Sentencing was held on January 4, 2001. (Exhibit 19). The district court found petitioner to be a habitual criminal and sentenced him to a term of life with the possibility of parole after ten years on Counts I, III, IV, and V, and to one year in the Clark County Detention Center on Count II, with all counts to run concurrent to each other and credit for time served of 588 days. (Exhibit 19). The judgment of conviction was filed on January 12, 2001. (Exhibit 21).

Petitioner filed his direct appeal on January 10, 2001.  After confusion regarding the proper case number was remedied, the appeal was accepted and counsel was appointed.  (Exhibit 25). Counsel filed an opening brief on January 25, 2002.  (Exhibit 30).  On December 20, 2002, the Nevada Supreme Court held that the Nevada statute creating a plea of "guilty but mentally ill" was unconstitutional and remanded the matter to the district court to allow petitioner an opportunity to enter a new plea.  (Exhibit 32).  Remittitur issued on January 23, 2003.  (Exhibit 34).

At the remand plea hearing on April 17, 2003, with the presence and assistance of counsel, petitioner declined the withdraw his plea and acknowledged his understanding that, since the plea remained the same, his sentence would remain the same, as well.  (Exhibit 35, at p. 2).  Two months later, petitioner sought to discharge his counsel and moved to file a *pro per* motion to correct an illegal sentence.  (Exhibits 36 and 37).  Petitioner contended that his sentence was illegal because the State did not file an amended information charging him under NRS 207.010, as an habitual criminal and listing his prior felony convictions after his guilty plea and before sentencing.  (Exhibit 37).  The state district court denied the motion to correct an illegal sentence.  (Exhibits 41 and 43).  On appeal from the denial of his motion to correct illegal sentence, petitioner made two claims:

> 1. Illegal sentence that is facially invalid.
>    a. State failed to include habitual criminal count in the amended information.
>    b. State failed to list Appellant's prior convictions in the amended information.
> 2. The State failed to memorialize the definition of the penalty.
>    a. The amended information failed to cite to a specific subsection of NRS 200.366 that appellant pled to and thereby failed to inform him of the penalty he would face and therefore he is entitled to the most lenient reading of the statute.
>    b. Appellant should be re-sentenced to a definite term of twenty (20) years with eligibility for parole beginning after five (5) years have been served.

(Exhibit 42).  The Nevada Supreme Court affirmed the lower court's decision on May 26, 2004. (Exhibit 53).  Remittitur issued June 24, 2004.  (Exhibit 55).

3

On November 15, 2004, petitioner filed a petition for extraordinary relief in the Nevada Supreme Court. (Exhibit 56). The Nevada Supreme Court denied the petition on December 2, 2004. (Exhibit 58). The Nevada Supreme Court held that:

> We have considered the petition on file herein, and we are not satisfied that extraordinary relief is warranted. A challenge to the validity of the judgment of conviction should be raised in a post conviction petition for a writ of habeas corpus filed in the district court in the first instance. [Footnote 1: See NRS 34.724(2)(b); NRS 34.738(1). We express no opinion as to whether petition could satisfy the procedural requirements of NRS chapter 34.].

(Exhibit 58).

On December 3, 2004, petitioner filed a second petition for extraordinary relief in the Nevada Supreme Court. (Exhibit 60). The petition raised identical claims to those presented in the first. The petition was denied on February 1, 2005, with the Nevada Supreme Court finding that the matter was moot. (Exhibit 67).

While the second petition for extraordinary relief was pending, on December 14, 2004, petitioner filed a motion for an order of good cause in the district court, in an attempt to obtain leave to file a late post-conviction petition. (Exhibit 61). The district court denied the motion on January 6, 2005. (Exhibit 64). On January 18, 2005, petitioner filed a "Motion to Vacate Legally-Void Conviction and Illegal Sentence Due to NRS 213.1214." (Exhibit 65). Petitioner's motion was denied by the state district court. (Exhibit 68).

On December 10, 2004, petitioner dispatched his federal habeas petition to this Court. (ECF No. 8). This Court appointed counsel on February 4, 2005. (ECF No. 6). On August 15, 2005, through counsel, petitioner filed the first amended petition containing four grounds for relief. (ECF No. 17). Respondents filed a motion to dismiss, arguing that petitioner failed to exhaust the grounds of the petition. (ECF No. 25). By order filed August 17, 2006, this Court granted in part and denied in part, the motion to dismiss. (ECF No. 29). This Court ruled that Grounds 3 and 4 of the amended petition had not been exhausted in state court. (*Id.*). By order filed December 14, 2006, this Court

granted petitioner's motion for a stay and abeyance, and ordered the action administratively closed, but judgment was not entered. (ECF No. 34).

On July 21, 2008, the Court granted petitioner's motion to reopen the action. (ECF No. 36). The second amended petition, filed on September 4, 2008, contains the same four grounds for relief as asserted in the first amended petition. (ECF No. 38). These grounds are as follows:

> Ground One: O'Guinn's sentence is illegal due to the state's failure to provide notice of its intent to seek habitual criminal sanctions thereby violating his right to due process of law guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.
>
> Ground Two: O'Guinn's sentence is illegal due to the state's failure to specify the penalty provision in Counts IV and V thereby violating O'Guinn's right to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.
>
> Ground Three: At the time of his remand hearing, O'Guinn was not competent and, as such, was not legally capable of making the decision whether to withdraw his plea. Therefore, O'Guinn is in custody in violation of his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution due to his inability to knowingly, intelligently, and voluntarily withdraw his plea.
>
> Ground Four: O'Guinn is in custody in violation of his Fifth and Fourteenth Amendment rights to due process due to the unconstitutionality of his plea of "guilty but mentally ill."

(ECF No. 38). Respondents moved to dismiss the second amended petition, arguing that Grounds 1 and 2 are unexhausted, and that Grounds 3 and 4 are procedurally defaulted. (ECF No. 43). By order filed June 30, 2009, this Court denied the motion to dismiss. (ECF No. 51). This Court had previously determined that Grounds 1 and 2 were exhausted, and therefore denied respondents' request to dismiss Grounds 1 and 2. (ECF No. 51, at pp. 5-6). This Court made the finding that Grounds 3 and 4 were procedurally defaulted in state court. (*Id.*, at pp. 6-8). However, the Court determined that the analysis of cause and prejudice issues were closely related to the analysis of the merits in this case. (*Id.*, at p. 8). As such, this Court deferred ruling on cause and prejudice issues until the merits were fully briefed. (*Id.*). The Court directed the parties to address the issue of

procedural default, including cause and prejudice, in the answer and reply brief. (*Id.*). On July 31, 2009, respondents filed an answer. (ECF No. 52). Petitioner, through counsel, filed a reply brief on October 30, 2009. (ECF No. 57). The Court now considers the merits of each ground of the second amended petition.

**II.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

6

principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**III. Discussion**

    **A. Procedural Default of All Grounds of Petition**

        **1. Procedural Default Principles**

Generally, in order for a federal court to review a habeas corpus claim, the claim must be both exhausted and not procedurally barred. *Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir. 2003). A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

The *Coleman* Court stated the effect of a procedural default, as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases. *See Koerner,* 328 F.3d at 1046.

To overcome a procedural default, a petitioner must establish either (1) "cause for the default and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted). Petitioner also must show prejudice to excuse the procedural default. The prejudice that is required as part of the showing of cause and prejudice to overcome a procedural default is "actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (1998); *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).

"Cause" to excuse a procedural default exists if a petitioner can demonstrate that some objective factor external to the defense impeded the petitioner's efforts to comply with the state procedural rule. *Coleman v. Thompson*, 501 U.S. at 755; *Murray v. Carrier*, 477 U.S. at 488; *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Ineffective assistance of counsel may satisfy the cause requirement to overcome a procedural default. *Murray*, 477 U.S. at 488. However, for ineffective assistance of counsel to satisfy the cause requirement, the independent claim of ineffective assistance of counsel, itself, must first be presented to the state courts. *Murray*, 477 U.S. at 488-89. In addition, the independent ineffective assistance of counsel claim cannot serve as cause if that claim is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

With respect to the prejudice prong of cause and prejudice, the petitioner bears:

> the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension.

*White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170 (1982). If the petitioner fails to show cause, the court need not consider whether the petitioner suffered actual prejudice. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d 528, 530 n.3 (9th Cir. 1988).

/ / / / / / / / /

**2. All Grounds of the Second Amended Petition Were Procedurally Defaulted in State Court on Independent and Adequate State Grounds**

### a. Grounds One and Two

Petitioner first raised Grounds One and Two in a motion to correct an illegal sentence. (Exhibit 42). The Nevada Supreme Court held that these claims were procedurally improper as a motion to correct an illegal sentence:

> In his motion, O'Guinn contended that the district court erred in adjudicating him a habitual criminal because the amended information did not provide notice that the State was pursuing habitual criminal status. O'Guinn further claimed that the amended information did not specify which penalty he was facing under the sexual assault statute.
>
> A motion to correct an illegal sentence may only challenge the facial legality of the sentence: either the district court was without jurisdiction to impose a sentence or the sentence was imposed in excess of the statutory maximum. A motion to correct an illegal sentence presupposes a valid conviction and may not, therefore, be used to challenge alleged errors in proceedings that occur prior to the imposition of the sentence.
>
> Based on our review of the record on appeal, we conclude that the district court did not err in denying O'Guinn's motion. O'Guinn's claims fell outside the very narrow scope of claims permissible in a motion to correct an illegal sentence. O'Guinn's sentence is within the range prescribed by statute, and there is nothing in the record to suggest that the district court was without jurisdiction to impose the sentence.

(Exhibit 53, at p. 2) (footnotes, citations, and internal quotations omitted). The Nevada Supreme Court found Grounds One and Two to be procedurally barred as outside the scope of claims permissible in a motion to correct an illegal sentence. (Exhibit 53, at p. 2).

### b. Grounds Three and Four

By order filed June 30, 2009, this Court determined that Grounds Three and Four of the second amended petition were procedurally defaulted in state court on independent and adequate state grounds of NRS 34.726 (timeliness). (ECF No. 51, at pp. 6-8). This Court deferred ruling on the issue of cause and prejudice until the merits of the petitioner were briefed. (ECF No. 51, at p. 8).

The Court now considers the parties' arguments concerning cause and prejudice to overcome procedural default as to all grounds of the second amended petition.

### 3. Cause and Prejudice Analysis

"Cause" to excuse a procedural default exists if a petitioner can demonstrate that some objective factor external to the defense impeded the petitioner's efforts to comply with the state procedural rule. *Coleman v. Thompson*, 501 U.S. at 755; *Murray v. Carrier*, 477 U.S. at 488; *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Ineffective assistance of counsel may satisfy the cause requirement to overcome a procedural default. *Murray*, 477 U.S. at 488. However, for ineffective assistance of counsel to satisfy the cause requirement, the independent claim of ineffective assistance of counsel, itself, must first be presented to the state courts. *Murray*, 477 U.S. at 488-89. In addition, the independent ineffective assistance of counsel claim cannot serve as cause if that claim is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

With respect to the prejudice prong of cause and prejudice, the petitioner bears:

> the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension.

*White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170 (1982). If the petitioner fails to show cause, the court need not consider whether the petitioner suffered actual prejudice. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d 528, 530 n.3 (9th Cir. 1988).

In his opposition to the prior motion to dismiss, petitioner attempts to show cause for procedural default based on his mental condition, citing *Laws v. LaMarque*, 351 F.3d 919, 923 (9th Cir. 2003), and *Calderon v. United States District Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998). (ECF No. 46, at p. 4).

In *Kelly*, the Ninth Circuit ruled that the petitioner was entitled to equitable tolling of the AEDPA statute of limitations due to the petitioner's mental illness. 163 F.3d at 541. Similarly, in

1  *Laws v. LaMarque*, the Ninth Circuit remanded a case to the district court for further factual
2  development on whether a petitioner's mental condition made it impossible for him to meet the
3  AEDPA statute of limitations deadline, and whether he was entitled to equitable tolling, due to his
4  mental condition.  351 F.3d at 923-925.  The standard for equitable tolling requires petitioner to
5  demonstrate: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary
6  circumstance stood in his way' and prevented timely filing.'" *Holland v. Florida*, 130 S.Ct. 2549,
7  2560, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

8    The equitable tolling standard is not applicable or equivalent to making a showing of cause
9  and prejudice to excuse the procedural default of state law claims.  In contrast, to demonstrate cause,
10 petitioner must demonstrate "an objective factor external to the defense impeded [his] efforts to raise
11 the claim in state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004).  Petitioner's
12 reliance on a finding of equitable tolling of the AEDPA based on mental illness does not equate to
13 good cause to overcome an adequate and independent state procedural bar.

14   Additionally, this Court notes that, on petitioner's return to state court, the Nevada Supreme
15 Court found that petitioner's mental illness did not constitute "good cause" to excuse the application
16 of the procedural bar denying the claims.  (Exhibit 84, at p. 2).

17   Because petitioner has failed to show cause to overcome the procedural default, the Court
18 need not address the prejudice prong.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v.*
19 *Arave*, 847 F.2d 528, 530 n.3 (9th Cir. 1988) (where petitioner fails to show cause, the court need not
20 consider whether the petitioner suffered actual prejudice).  All grounds of the second amended
21 petition were procedurally defaulted and petitioner failed to show cause to overcome the procedural
22 default.
23 / / / / / / / / / /
24 / / / / / / / / /
25 / / / / / / / / /
26

**B. Analysis of Merits of the Second Amended Petition**

Assuming *arguendo,* that this Court found cause and prejudice to allow review of petitioner's procedurally defaulted petition, a substantive analysis of the merits of each claim in the second amended petition is now discussed.

**1. Ground One**

Petitioner alleges that his sentence is illegal due to the State's failure to provide notice of its intent to seek habitual criminal status pursuant to NRS 207.010, thereby violating his due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. (Second Amended Petition (SAP), ECF No. 38, at pp. 6-7).

The plea agreement filed October 2, 2000, gave petitioner sufficient notice of the charges he faced and the State's intent to seek habitual criminal status. The plea agreement contained the following language:

> I acknowledge that the State is retaining its right to seek habitual criminal treatment against me at the time of sentencing. I further acknowledge that the State will present to this Court at the time of sentencing, evidence of my prior criminal convictions and that such convictions make me eligible for habitual criminal treatment pursuant to NRS 207.010(b) and NRS 207.012. I further agree not to oppose this Court adjudging me an habitual criminal pursuant to NRS 207.010(b).

(Exhibit 16, at p. 1). The agreement addressed the penalties that petitioner faced if the court adjudicated him a habitual criminal. (Exhibit 16, at pp. 3-4). The state district court discussed the habitual criminal enhancement with petitioner and ensured that he had read the plea agreement and understood the terms. (Exhibit 17, at pp. 3-4). At sentencing, the court noted that it received proof of petitioner's prior felony convictions, made a finding that it was just and proper to adjudicate petitioner a habitual criminal, and then adjudicated petitioner a habitual criminal. (Exhibit 19, at p. 4).

"Criminal defendants are entitled to make agreements that affect their constitutional rights." *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994), citing *Newton v. Rumery*, 480 U.S. 386, 393

1  (1987). "The fundamental rights afforded [a petitioner] in the Constitution do not relieve him 'from
2  the consequences of his voluntary choice.'" *Id.*, citing *Ricketts v. Adamson*, 483 U.S. 1, 8 (1987). In
3  the instant case, petitioner negotiated a plea agreement allowing him to serve four 10-to-life
4  sentences concurrently, avoiding a potential seven consecutive life sentences. He received the
5  sentence for which he bargained. Petitioner received adequate notice of the habitual offender
6  proceedings in the plea agreement. There is no United States Supreme Court authority prohibiting a
7  defendants' notice of the charges against him and habitual criminal enhancements from being
8  contained in the plea agreement. Petitioner's claim is meritless, and habeas relief is denied as to
9  Ground One.

          **2. Ground Two**

11  Petitioner alleges that his sentence is illegal due to the State's failure to specify the penalty
12  provision in Counts IV and V, thereby violating petitioner's right to due process guaranteed by the
13  Fifth and Fourteenth Amendments to the United States Constitution. (SAP, ECF No. 38, at pp. 7-9).
14  In the plea agreement, petitioner stipulated to the penalty he received. (Exhibit 16, at p. 2).
15  Nevada's sexual assault statute addresses the penalties for three classes of sexual assault. Subsection
16  4 concerns sexual assault committed against a child under age 16, where defendant has previously
17  been convicted of sexual assault; subsection 3 concerns sexual assault committed against a child
18  under the age of 16; subsection 2 concerns sexual assault committed against an adult. NRS 200.366.
19  Subsection 2 applied to petitioner's case. Subsection 2 authorizes penalties based upon whether
20  substantial bodily harm resulted from defendant's actions (paragraph a), or no substantial bodily
21  harm was sustained by the victim (paragraph b). NRS 200.366(2). No allegation of substantial
22  bodily harm is alleged in the amended information, thus the court had the option of sentencing
23  petitioner from the two options is the least serious category, a sentence of life, with the possibility of
24  parole after 10 years, or a definite term of 25 years with parole eligibility after 10 years. NRS
25  200.366(2)(b). As to Counts IV and V, petitioner received a sentence from those two options – life

1  with the possibility of parole after 10 years. (Exhibit 21). The plea agreement set forth the sentence
2  petitioner received as a possible sentence. (Exhibit 16, at p. 3, lines 15-22). The court also
3  addressed the sentence with petitioner at the change of plea hearing. (Exhibit 17, at p. 4). Petitioner
4  received a sentence within the permissible range of sentences for Counts IV and V. (Exhibit 53, at p.
5  2). Ground Two of the petition is without merit and habeas relief is denied.

### 3. Ground Three

Petitioner asserts that, at the time of his remand hearing on April 17, 2003, he was not competent and was not capable of knowingly, intelligently, and voluntarily making the decision whether to withdraw his plea. Petitioner asserts that he is in custody in violation of his right to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. (SAP, ECF No. 38, at pp. 9-18).

Petitioner claims that he was incompetent at the time of the remand hearing on April 17, 2003. The public defender appointed to represent petitioner, Joseph Abood, was the same attorney who represented petitioner during his initial criminal proceedings in the state district court. (Exhibits 2 & 35). The state court record reflects that Abood notified the court prior to the hearing that his client did not wish to withdraw his plea, presumably after meeting with his client. (Exhibit 35). There is nothing on the record indicating that petitioner's attorney, with whom he dealt for almost four years, questioned his competency. (*Id.*). The court raised no question of competency. (*Id.*).

Petitioner provides no evidence that he was incompetent at the time of the remand hearing on April 17, 2003. Petitioner provides a June 1999 report finding him incompetent, which resulted in his commitment to the Lakes Crossing Center on June 29, 1999. (Exhibits 69, 70). Petitioner also provides an evaluation from June 2005, over two years after the remand hearing. (Exhibit 75). Petitioner's federal petition cites the record from the October 2, 2000 change of plea hearing (Exhibit 17, rather than the record from the April 17, 2003 hearing on remand (Exhibit 35). The October 2, 2000 change of plea hearing, years prior to the remand hearing, is irrelevant to the issue of

petitioner's competency at the April 17, 2003 remand hearing.  Petitioner's claim is without merit, and this Court denies habeas relief as to Ground Three.

### 4.  Ground Four

Petitioner alleges that he is in custody in violation of his Fifth and Fourteenth Amendment rights to due process because his plea of "guilty but mentally ill" is unconstitutional. (SAP, ECF No. 38, at pp. 18-19).

At the remand hearing on April 17, 2003, petitioner declined to withdraw his plea, in all likelihood, to avoid a potential sentence of seven consecutive life sentences and to challenge the concurrent life sentences he received.  After declining to withdraw his sentence, petitioner moved to discharge his attorney (Exhibit 36) and filed a motion challenging his sentences (Exhibit 37).  In the motion challenging his sentences, petitioner stated that declining to withdraw his plea had a purpose:

> At said time, in district court, the appellant informed the district that he did not wish to withdraw his plea agreement, because the appellant had in mind to motion the district court to sentence him pursuant to the information on file, which would have granted great relief in the instant case.

(Exhibit 42, at pp. 5-6).  Petitioner apparently sought what he thought would have been better than a life sentence, a term of definite years with parole in five years, rather than ten years:

> The appellant believes that he should be sentenced to the most lenity sentence the statute provides, which would be: for a definite term of 20 years with eligibility for parole beginning when a minimum of 5 years has been served.  If the appellant receives something more or equal to his present sentence, this would be double jeopardy, by allowing the state to correct such errors and/or rewarding the state after they, the state had failed in their filing procedures.

(Exhibit 42, at p. 10).  Rather than filing a state habeas corpus petition, or a petition for writ of mandamus, he filed motion to correct illegal sentence, which the Nevada Supreme Court rejected on procedural grounds. (Exhibits 43 & 53).

As such, this Court finds that, on April 17, 2003, petitioner rejected the opportunity to withdraw his plea for strategic purposes, that is, to file a motion in the hope of reducing his existing

1  sentence, rather than creating exposure to the potential of a much more severe sentence.  (Exhibit 35,
2  42).

3    The Nevada Supreme Court's order of remand, filed December 20, 2002, the court notes that
4  petitioner should be allowed to enter a plea of not guilty by reason of insanity.  (Exhibit 32, at p. 5).
5  Nevada's insanity defense is the *M'Naughten* test.  NRS 174.035(5); *State v. Finger*, 117 Nev. 548,
6  27 P.3d 66 (2001).  Petitioner has cited no authority supporting his argument that the Nevada
7  Supreme Court must invalidate the plea, rather than remanding the matter.  Petitioner anticipated a
8  benefit when he refused to withdraw his plea and then attack the sentence.  Petitioner has failed to
9  meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable
10  application of, clearly established federal law, as determined by the United States Supreme Court, or
11  that the ruling was based on an unreasonable determination of the facts in light of the evidence
12  presented in the state court proceeding.  This Court will deny habeas relief as to all grounds of the
13  second amended petition.

14  **IV. Certificate of Appealability**

15    In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28
16  U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951
17  (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a
18  petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a
19  certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84
20  (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's
21  assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In
22  order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are
23  debatable among jurists of reason; that a court could resolve the issues differently; or that the
24  questions are adequate to deserve encouragement to proceed further. *Id.*  This Court has considered
25  the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a
26

certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**V. Conclusion**

**IT IS THEREFORE ORDERED** that the second amended petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this   4th   day of August, 2011.

_____
UNITED STATES DISTRICT JUDGE